UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CARLOS QUEVEDO,

    Petitioner,

vs.

GREG SMITH, *et al.*,

    Respondents.

3:10-cv-00200-LRH-VPC

**ORDER**

This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner. Before the Court is respondents' motion to dismiss. (ECF No. 10).

**I. Background**

On December 30, 1997, the Ninth Judicial District Court of the State of Nevada entered a judgment of conviction, pursuant to a jury verdict, finding petitioner guilty of six counts of sexual assault. (Exhibit 118).[1] Petitioner was sentenced to six life terms with the possibility of parole after ten years. (*Id.*). The sentences on the first two counts run consecutively, and the sentences on the remaining four counts run concurrent to each other and concurrent to the sentences on the first two counts. (*Id.*).[2]

---

[1] The exhibits referenced in this order are found in the Court's record at ECF No. 11-18.

[2] Petitioner was previously convicted, by jury trial, of seven counts of sexual assault. (Exhibit 53). The Nevada Supreme Court reversed the conviction and remanded for a new trial, because the district court did not conduct a hearing pursuant to NRS 51.385 to determine the trustworthiness of the child victim's hearsay statements. (Exhibit 60).

On January 1998, petitioner filed a notice of appeal. (Exhibit 120). On September 14, 1998, petitioner's opening brief was filed by his appellate counsel. (Exhibit 130). On November 18, 1999, the Nevada Supreme Court filed an order dismissing the appeal. (Exhibit 137). On May 23, 2000, petitioner filed a motion for rehearing, and on August 30, 2000, the Nevada Supreme Court denied rehearing. (Exhibit 146). Remittitur issued on September 15, 2000. (Exhibit 147).

On September 13, 2001, counsel for petitioner filed a state habeas petition. (Exhibit 148). After holding an evidentiary hearing, the state district court entered an order on January 18, 2006, denying the habeas petition. (Exhibit 194). On January 27, 2006, petitioner filed a notice of appeal. (Exhibit 195). On November 21, 2006, petitioner's opening brief was filed. (Exhibit 218). On June 22, 2007, the Nevada Supreme Court issued an order affirming the denial of the state habeas petition. (Exhibit 225). Remittitur issued on July 17, 2007. (Exhibit 226).

On April 6, 2010, petitioner dispatched his federal habeas petition to this Court. (ECF No. 6, at p. 1). Respondents have filed a motion to dismiss the petition. (ECF No. 10).

**II. Discussion**

**A. The Federal Habeas Petition is Untimely**

Respondents argue that the petition is untimely, pursuant to 28 U.S.C. § 2244(d). The Antiterrorism and Effective Death Penalty Act (AEDPA) amended the statutes controlling federal habeas corpus practice to include a one-year statute of limitations on the filing of federal habeas corpus petitions. With respect to the statute of limitations, the habeas corpus statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d).

For purposes of the AEDPA limitations period, "a judgment becomes 'final' in one of two ways – either by the conclusion of direct review by the highest court, including the United States Supreme Court, to review the judgment, or by the expiration of the time to seek such review, again from the highest court from which such direct review could be sought." *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001). "[W]hen a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires." *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). United States Supreme Court Rule 13.1 provides that a petitioner has ninety days from the entry of judgment or entry of an order denying rehearing, within which to file a petition for certiorari. Sup. Ct. R. 13.1. Rule 36(a) of the Nevada Rules of Appellate Procedure states that "[t]he filing of the court's decision or order constitutes entry of judgment."

In the instant case, the judgment of conviction was entered against petitioner on December 30, 1997. (Exhibit 118). The Nevada Supreme Court's order of affirmance on direct review was filed November 18, 1999. (Exhibit 137). The Nevada Supreme Court issued final judgment, which concluded petitioner's direct appeal, when it denied his petition for rehearing on August 30, 1999. (Exhibit 146). Petitioner's conviction became final on November 28, 2000, which is 90 days after the Nevada Supreme Court filed its order denying rehearing. The AEDPA one-year statute of limitations began to run on November 28, 2000. Petitioner had until November 28, 2001, to file his federal habeas petition, unless otherwise tolled by federal statute.

Petitioner filed his state post-conviction habeas petition on September 13, 2001. (Exhibit 148). Since petitioner had no properly filed application for a state post-conviction petition or other collateral review pending between November 28, 2000 and September 13, 2001, this period of time is not statutorily tolled. 28 U.S.C. § 2244(d). During this period, 289 days elapsed.

From September 13, 2001 until July 17, 2007, petitioner litigated his state post-conviction petition in the state courts. (Exhibits 148-226). This period of time is statutorily tolled. 28 U.S.C. § 2244(d)(2).

Petitioner dispatched his habeas corpus petition to this Court on April 6, 2010.[3] (Petition, ECF No. 5, at p. 1). The period of time between July 17, 2007 and April 6, 2010, was not statutorily tolled, as petitioner had no state post-conviction petition or other collateral review pending during this time. 28 U.S.C. § 2244(d). During this period, 993 days elapsed. Petitioner used a total of 1,282 days that was not tolled by statute before he filed his federal habeas petition. The petition is untimely pursuant to 28 U.S.C. § 2244(d).

**B. Petitioner is Entitled to Equitable Tolling from 6/7/07 through 10/21/09**

**1. Standard for Equitable Tolling**

The United States Supreme Court has held that the AEDPA's statute of limitations, at 28 U.S.C. "§ 2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). "The AEDPA statute of limitations defense . . . is not jurisdictional" and "it does not set forth an inflexible rule requiring dismissal whenever the clock has run." *Holland,* 130 S.Ct. at 2560 (internal quotations and citations omitted). "[A] non-jurisdictional federal statue of limitations is normally subject to a 'rebuttable presumption' in *favor* 'of equitable tolling." *Id.* (emphasis in original) (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96 (1990)). "In the case of the AEDPA, the presumption's strength is reinforced by the fact that equitable

---

[3] Pursuant to the "mailbox rule," federal courts deem the filing date of a document (in a federal action) as the date that it was given to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 270 (1988).

principles have traditionally governed the substantive law of habeas corpus." *Holland*, 130 S.Ct. at 2560 (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (internal quotations omitted).

In *Holland*, the Supreme Court reiterated that "a petitioner is entitled to equitable tolling only if he shows: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S.Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The Court made clear that the "exercise of a court's equity powers . . . . must be made on a case-by-case basis," while emphasizing "the need for flexibility" and "avoiding [the application of] mechanical rules." *Holland*, 130 S.Ct. at 2563 (internal quotations and citations omitted). In making a determination on equitable tolling, courts must "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Holland*, 130 S.Ct. at 2563.

Where professional misconduct is asserted, the Court recognized that "a garden variety claim of excusable neglect" . . . such as a simple miscalculation that leads a lawyer to miss a filing deadline . . . does not warrant equitable tolling." *Holland*, 130 S.Ct. at 2564 (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. at 96 and *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)). "[A]lthough the circumstances of a case must be 'extraordinary' before equitable tolling can be applied, we hold that such circumstances are not limited to those that satisfy the test that the Court of Appeals used in this case." *Holland*, 130 S.Ct. at 2564. The "rigid" *per se* test that was rejected in the *Holland* decision was the Eleventh Circuit's rule that, when a petitioner sought to excuse a late filing on the basis of his attorney's unprofessional conduct, such conduct, even if it was negligent or grossly negligent, could not rise to the level of egregious attorney misconduct to warrant equitable tolling unless the petitioner offered "proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth." *Id.* at 2554.

**2. Application to the Instant Case**

Petitioner does not dispute that his petition is untimely, but instead argues for equitable tolling. Petitioner claims that on or about June 7, 2007, petitioner's family was contacted by Jeffrey

1  Metcalfe, Sr.  (Opposition, ECF No. 22, at p. 3).  Petitioner claims that Mr. Metcalfe told
2  petitioner's family that he could get petitioner out of prison.  (ECF No. 22 and Exhibits).  The
3  affidavit of petitioner's mother, Amparo Quevedo, and petitioner's father, Jesus N. Quevedo,
4  indicate that they met with Mr. Metcalfe in their family home on June 7, 2007, concerning their
5  son's criminal case.  (ECF No. 22, Exhibits A and B).  Mr. Metcalfe told petitioner's parents that he
6  knew about petitioner's case and that he could get their son out of prison for a payment of
7  $2,000.00.  (*Id.*).  Jesus Quevedo paid Mr. Metcalfe $1000.00 on June 7, 2007, with the expectation
8  that Metcalfe would be filing the necessary documents in court to win the release of his son.  (ECF
9  No. 22, Exhibit B).  Jesus Quevedo was to pay Mr. Metcalfe another $1000.00 once petitioner was
10 released from prison.  (*Id.*).  Petitioner's sister-in-law, Mauela Barba, also attended the meeting with
11 Mr. Metcalfe and petitioner's parents on June 7, 2007.  (ECF No. 22, Exhibit C).  Ms. Barba states
12 that from 2007-2009, she spoke with Mr. Metcalfe approximately every 6 to 8 weeks via telephone,
13 concerning the status of petitioner's case.  (*Id.*).  During a telephone conversation with Mr. Metcalfe,
14 Ms. Barba expressed concern that a "2254 petition" should be filed.  (*Id.*).  Mr. Metcalfe told Ms.
15 Barba: "No, do not let Carlos [petitioner] file anything, it will mess up what I am doing on his case."
16 (*Id.*).  Ms. Barba relayed this information to petitioner.  (*Id.*).

17   In October 2009, petitioner's father, Jesus Quevedo, received a copy of a pardons board
18 application prepared by Mr. Metcalfe on behalf of petitioner.  (ECF No. 22, Exhibit B).  Petitioner's
19 father mailed the copy of the pardons board application to his son, petitioner.  (*Id.*).  Petitioner's
20 father discussed this with petitioner, and "we both realized for the first time that Mr. Metcalfe did
21 not ever intend to, and had failed to file any court documents."  (*Id.*).  In his opposition, petitioner
22 states that "from June 7, 2007 to October 21, 2007, petitioner and his family believed Mr. Metcalfe
23 had filed the proper petition, or other documents, in this Court."  (ECF No. 22, at p. 6).

24   Finally, petitioner submits a copy of Jeffrey Metcalfe's business card, in which he is
25 identified as "Ph.D., Religious Ed./Law Studies."  The business card also contains the words:
26 "CFFM Inc.," "MITIGATION/CLEMENCY," as well as an apparent business address, email, and
27 phone number.  (ECF No. 22, at Exhibit D).

28

6

Although ordinary attorney negligence does not justify equitable tolling, egregious misconduct by an attorney may constitute "extraordinary circumstances" warranting equitable tolling. *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003) (allowing equitable tolling where attorney was hired nearly one year in advance of filing deadline but completely failed to prepare and file a petition). In *Lopez v. INS*, 184 F.3d 1097 (9th Cir. 1999), the Ninth Circuit applied equitable tolling where petitioner "retained an apparent law office" to assist him in obtaining a work permit. Petitioner paid for "legal representation," however, Noel, the person representing him, was not an attorney. Instead of filing a request for a work permit, Noel filed an application for political asylum. Upon receiving notice of the denial of his application for political asylum, petitioner became doubtful of Noel and contacted separate counsel. *Id.* at 1098-99. The Court allowed equitable tolling based on the exceptional circumstances of Noel engaging in fraud by posing as an attorney and petitioner's reasonable reliance on the fraudulent representation. *Id.* at 1100. Similarly, this Court finds that petitioner reasonably relied on Mr. Metcalfe's fraudulent representation that he would file all necessary papers with the court to gain petitioner's release from prison. Petitioner reasonably believed that Metcalfe would file a federal habeas petition on his behalf. Petitioner is entitled to equitable tolling from June 7, 2007, the date that Metcalfe was retained to represent petitioner, through October 21, 2009, the date that petitioner realized that Mr. Metcalfe was not an attorney and had not filed a federal petition habeas petition in this Court.

**C. Applying Equitable Tolling, the Petition is Still Untimely**

As previously discussed in this order, the AEDPA one-year statute of limitations began when petitioner's conviction became final, on November 28, 2000. The time period from November 28, 2000, until the date that petitioner filed his post-conviction state habeas petition on September 13, 2001, is not tolled, because petitioner had no properly filed state post-conviction petitioner or other collateral review pending. 28 U.S.C. § 2244(d)(2). During this period, 289 days of untolled time elapsed. From September 13, 2001, until July 17, 2007, petitioner litigated his state post-conviction petition in the state courts. (Exhibits 148-226). This period of time is statutorily tolled. 28 U.S.C. §

7

2244(d)(2). At the conclusion of his state post-conviction litigation on July 17, 2007, petitioner had 76 days left to file his federal habeas petition.

Petitioner states that he became aware that Metcalfe would not be filing a federal petition for him on October 21, 2009. (ECF No. 22, at p. 6). Petitioner signed and dispatched his federal habeas petition to this Court on April 6, 2010. (ECF No. 6). From October 21, 2009 to April 6, 2010, 167 days of untolled time elapsed. Even allowing for equitable tolling between the dates of June 7, 2007, and October 21, 2009, petitioner used a total of 456 days of untolled time to file his petition. The federal petition was filed after the one-year AEDPA statute of limitations. 28 U.S.C. § 2244(d).

During the untolled period of time, there is nothing that made it impossible for petitioner to file his federal petition. Petitioner cannot contend that any alleged lack of his file prevented him from filing a petition. Petitioner states in his opposition that his trial and appellate counsel gave his case file to post-conviction counsel, Glynn Cartledge, and that at the conclusion of his state post-conviction proceedings, Mr. Cartledge released petitioner's case file to his parents. The delivery of petitioner's file to his parents was presumably at petitioner's request, and petitioner presumably could have gained access to his file from his parents at any time. Petitioner states that his file was lost and/or discarded while in his parents' possession. (ECF No. 22, at p. 5). While unfortunate, this is not sufficient to excuse the timely filing of a federal petition. The federal petition is untimely, and petitioner has not shown that it was impossible to file his federal petition in a timely manner.

### III. Certificate of Appealability

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues

1 are debatable among jurists of reason; that a court could resolve the issues differently; or that the
2 questions are adequate to deserve encouragement to proceed further. *Id.* This Court has considered
3 the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a
4 certificate of appealability, and determines that none meet that standard. The Court will therefore
5 deny petitioner a certificate of appealability.

**IV. Conclusion**

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 10) is **GRANTED.**

**IT IS FURTHER ORDERED** that the petition is **DISMISSED IN ITS ENTIRETY**, as untimely.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

Dated this 5th day of February, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

9